**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LYNNE C. KROP,**

    **Plaintiff,**

v.                                                 **Case No.  8:06-cv-157-T-30MSS**

**R. JAMES NICHOLSON, Secretary**
**DEPARTMENT OF VETERANS**
**AFFAIRS,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment or Partial Summary Judgment (Dkt. 19) and Plaintiff's Response in Opposition to the same (Dkt. 26).

## FACTUAL BACKGROUND

Plaintiff, an observant Jewish female, was employed by the Department of Veterans Affairs as a Clinical Pharmacy Specialist at Bay Pines Veterans Administration Medical Center. She held this position from 1990 until her resignation in 2004. At the time of her resignation, Plaintiff was an infectious disease clinical pharmacist and clinical residency director. James Clark was the Chief of Pharmacy Service and Bay Pines, and Paul Laucka was the Assistant Chief.[1] Previously, Mark Walton had been the Chief of Pharmacy and William Byrd had been the Assistant Chief.

---

[1] Clark became Chief in January of 2002.

*<u>Plaintiff's Request for a flex-time schedule.</u>*

At the time Plaintiff was hired, she was given a fixed work schedule of 8:00 a.m. to 4:30 p.m.  When her children began kindergarten, Plaintiff found it difficult to arrive at work by 8:00 a.m. on those days when she took her children to school.  Plaintiff asked for and was granted permission to begin work at 8:15 a.m. on those days she was responsible for taking her children to school.  Accordingly, on those days, Plaintiff would work until 4:45 p.m. Plaintiff made this arrangement with Byrd, but it was not placed in writing.  On average, Plaintiff took advantage of this delayed starting time two to three times a week.  According to Plaintiff, at no time did this schedule affect her job duties or patient care.

On June 4, 2004, Clark sent an email to Plaintiff advising her that Pharmacy Service did not provide flexible work schedules and she needed to adhere to the 8:00 a.m. to 4:30 p.m. schedule.  Clark offered to further discuss the matter with Plaintiff, but informed her that her failure to adhere to the set schedule may result in corrective action.  According to Clark, there was a policy against flextime at Bay Pines based on upper management's desire not to offer it, despite it being authorized by the labor union.  However, the VA did offer compressed time to its employees, both male and female.  Under the compressed time schedule, employees worked a shorter week, but were required to work longer hours during the days they worked.  Plaintiff was offered this as an alternative work schedule, but she declined the offer.

On June 29, 2004, Plaintiff, Clark and a union representative met to discuss Plaintiff's schedule.  During that meeting, Clark denied Plaintiff's request for a flex-time schedule,

stating that if he granted her such a schedule, he would be obligated to consider the same for the entire Pharmacy. As an alternative, Clark suggested Plaintiff change her fixed schedule to 8:15 a.m. to 4:45 p.m.. Plaintiff did not accept this option because she felt it was too restrictive, and would not provide her the flexibility she needed to care for her children.

### *Plaintiff's Request for Leave Without Pay (LWOP) for religious days and childcare.*

As an observant Conservative Jew, Plaintiff celebrates the Jewish High Holy days, such as Rosh Hashanah and Yom Kippur. Plaintiff is responsible for preparing the meals necessary for participating in the religious ceremonies associated with the holy days. In preparing for these holy days, Plaintiff cooked large meals on the afternoon prior to the holy day. Because these Jewish holy days began at sundown, Plaintiff would often request leave in order to prepare for the holiday. Specifically, Plaintiff would request LWOP for the days needed for both the preparation and observance of the Holy days.[2] According to Plaintiff, VA policy permitted an employee to take LWOP for any reason, even if the employee had accrued annual or sick leave. Prior to Clark's tenure, Plaintiff was permitted to use her LWOP for her religious holidays.

In December 2003, Plaintiff met with Clark and Laucka to discuss her use of LWOP. During this meeting, Clark informed Plaintiff that she was using excessive amounts of LWOP and that she needed to accrue her annual leave and plan her vacations and time off

---

[2] In addition to using LWOP for religious holidays, Plaintiff also used leave to attend school activities, including PTA meetings and sporting events, and to take time off to care for her children when her nanny was sick. Plaintiff used her LWOP for these activities in order to conserve her annual leave for family vacations.

using annual leave. Clark further advised Plaintiff that as of that date, she had used 146.5 hour of LWOP for the fiscal year 2003.[3] After this December 2003 meeting, Plaintiff requested LWOP for Passover. This leave was approved by Clark as a holiday.

On August 6, 2004, Plaintiff sent Clark an email requesting 20 hours of LWOP for Rosh Hashanah and Yom Kippur (September 16,17 and 24, 2004, respectively). While Plaintiff's request for LWOP was denied, Clark did approve her use of annual leave for those days. Clark informed Plaintiff that while he wanted to accommodate her, he would not approve LWOP pay for such activities. Clark indicated that he was amenable to adjusting Plaintiff's work schedule to assist her in accruing compensatory overtime in order to allow her to take time off for the holiday without her annual leave being affected. According to Clark, Plaintiff declined to work those compensatory overtime hours.

On August 20, 2006, Plaintiff and Clark met with an EEO counselor to discuss the issue of leave for the observance of religious holidays. During that meeting, Clark again reiterated his position that LWOP would not be acceptable to use to observe religious holidays. He again offered Plaintiff the opportunity to earn compensatory time to assist her with the days she needed off for religious holidays. Plaintiff indicated she would submit a request for compensatory time. Apparently, however, there was a loss in communication during this meeting, because at the conclusion of the meeting, Plaintiff thought she and Clark had reached an agreement whereby she would be able to use LWOP for all upcoming

---

[3] Plaintiff felt this number was inaccurate and checked her times records. After requesting a copy of her time records from the timekeeper, Plaintiff determined that she had used only 85 hours of LWOP for the fiscal year 2003.

religious holidays.  This was not Clark's understanding.  As such, when Plaintiff sent an email to Clark on September 8, 2004, inquiring about LWOP for upcoming holidays, Clark informed Plaintiff that his position had not changed and he would not grant such leave. Having not submitted for compensatory time, Plaintiff advised Clark that because she did not have sufficient annual leave to cover the holiday, she needed LWOP.  Clark then instructed Plaintiff to use her accrued annual leave, which totaled two hours, and granted her LWOP for the balance of the holiday.  However, since Yom Kippur did not begin until sundown, Clark did not approve LWOP for that holiday.  In his email to Plaintiff regarding leave, Clark reiterated that while he was happy to allow usage of annual leave for religious holiday, he would suggest that she begin to plan for holiday leave requests regarding her annual leave accrual for the next year.

Plaintiff, after receiving Clark's email, tendered her resignation on September 9, 2004.

## DISCUSSION

**A.    Summary Judgment Standard.**

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this rather exacting standard. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  In applying this framework, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. See Arrington v. Cobb County, 139 F.3d 865, 871 (11th Cir.1998); Allen v. Tyson Foods, Inc.,

121 F.3d 642, 646 (11th Cir.1997).

Equally clear, however, is the principle that the nonmoving party bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in his or her favor. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir.1990). The nonmoving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response ⋯ must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 835 (11th Cir.1998) ("Summary judgment may be granted if the evidence is 'merely colorable.'") (quoting Anderson, 477 U.S. at 248, 106 S.Ct. 2505).

Summary judgments for defendants are not rare in employment discrimination cases. See Earley, 907 F.2d at 1081.  Indeed, where the evidence supporting a plaintiff's employment claim "is merely colorable or is not significantly probative," summary judgment should be granted." Id. at 1080. Further, and significantly, mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment. See Earley, 907 F.2d at 1081. The failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. See Celotex, 477 U.S. at 322.

**B.     Sex Discrimination.**

Plaintiff alleges that Defendant discriminated against her based on her gender when Clark denied her flex-time (the ability to report to work at 8:00 a.m. or 8:15 a.m. at her discretion). As Plaintiff has not presented any direct or statistical evidence of discrimination, she must rely on the burden shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). In McDonnell Douglas, the Supreme Court created a framework for analyzing Title VII cases based on circumstantial evidence. See id. To prove discriminatory treatment through circumstantial evidence, a plaintiff must first establish a prima facie case of discrimination. Once a prima facie case is established, the burden then shifts to the defendant to show a nondiscriminatory reason for the employment action. See Brooks v. County Commission of Jefferson County, 446 F.3d 1160, 1162 (11th Cir. 2006). Once the employer articulates a legitimate nondiscriminatory reason for the employment decision, the burden shifts back to plaintiff to establish pretext. See id. at 1163. To prove pretext, a Plaintiff must present evidence that creates an issue of fact as to whether the reason offered by the employer is pretextual and whether discrimination is the true reason. See Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 146-47 (2000) (quoting St. Mary's Honor Center v. Hicks, 590 U.S. 502, 519 (1993)(stating that "[i]t is not enough to *dis-believe* the

employer; the fact finder must believe the plaintiff's explanation of intentional discrimination")(emphasis in original)).

### 1. *Disparate Treatment.*

In order to establish a prima facie case of disparate treatment, a plaintiff must demonstrate that: (1) she is a member of protected class; (2) she was subject to an adverse employment action; (3) her employer treated similarly situated males more favorably; and (4) she was qualified for the job. See Crapp v. City of Miami Beach, 242 F.3d 1017, 1020 (11th Cir. 2001). In proving similarity, a plaintiff must show that the employees used as comparators were similar "in all relevant respects." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

Defendant argues that Plaintiff has failed to establish a prima facie case as she cannot establish she was treated differently than similarly situated male employees because of her gender. This Court agrees.

Plaintiff has presented no evidence that any male Clinical Pharmacist working at Bay Pines during the time Plaintiff was employed was granted a modified flex time schedule.[4] In fact, Plaintiff testified that she was unaware of any employees who worked in the pharmacy who had the modified flex time she requested. While Defendant did offer employees alternative work schedules, i.e., compressed schedules, Plaintiff did not want such

---

[4] It should be noted that Defendant suggested to Plaintiff that she change her set schedule and begin her work day at 8:15 a.m instead of 8:00 a.m to provide her time to take her children to school. This alternative fixed schedule would end her work day at 4:45 p.m. Plaintiff declined this alternative because it did not provide her the flexibility she required to care for her family.

an alternative.[5] Such an arrangement, according to Plaintiff, would not accommodate her child care needs. In reviewing the evidence presented, it is clear to this Court that Plaintiff's claim is not that Defendant failed to provide alternative work schedules to employees, rather the alternative work schedule she *wanted* was not granted. While Plaintiff may not have agreed with Clark's decision, she has failed to establish the decision not to offer her a modified flex schedule was discriminatory. Accordingly, Plaintiff's sex discrimination claim is dismissed and summary judgment as to this claim is granted.

### 2.   *Disparate Impact.*

Plaintiff also alleges that Clark's policy of disallowing flex time has a discriminatory impact on female employees. To establish a prima face case of disparate impact, Plaintiff first must demonstrate "that [a] facially neutral employment practice ha[s] a significantly discriminatory impact" on individuals in a protected class, i.e. race, color, religion, sex, or national origin. E.E.O.C. v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1274 -1275 (11th Cir.2000) (omissions in original). Second, she must "demonstrate causation by offering statistical evidence sufficient to show that the challenged practice resulted in prohibited discrimination." See Spivey v. Beverly Enterprises, Inc., 196 F.3d 1309, 1314 (11th Cir. 1999). If Plaintiff is able to establish a prima facie case, Defendant must then respond with

---

[5] Plaintiff testified that another male pharmacist requested and received compressed time to accommodate his child care needs. (Dkt. 19-2, P. Depo at pg. 25). Plaintiff, too, was offered this accommodation and she declined it.

evidence that the challenged practice is not only related to the position in question, but is also consistent with business necessity.

While Plaintiff has identified the specific employment practice (failure to allow flex time), she has failed to present any statistical evidence demonstrating that Clark's policy had a disproportionate impact on female employees. The evidence she has presented, a report by Dr. David A. Ralston, is a general overview of the concept of flex-time, why it is beneficial in the work environment, and how flex-time, in general, benefits female employees. The report, while informative, falls short of the substantial statistical evidence needed to support Plaintiff's disparate impact claim. See Joe's Stone Crab, 220 F.3d at 1274-75 (stating that the statistical evidence must be of a kind and degree sufficient to show that the *practice in question* has *caused* the denial of members of a protected group access to employment opportunities because of their membership in the protected group)(emphasis added (citing Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 995 (1988)). See also MacPherson v. University of Montevallo, 922 F.2d 766, 771 (11th Cir. 1991)(noting that " 'a plaintiff must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack.' [T]o show that there is an imbalance is not enough.")). Absent such statistical evidence, Plaintiff's claim fails.

**C.    Religious Discrimination.**

Plaintiff also alleges Defendant failed to accommodate her religious practices by refusing her request to use LWOP to observe Yom Kippur and Rosh Hashanah. Title VII

imposes a duty on employers to reasonably accommodate an employee's religious observance or practice, unless the accommodation would cause an undue hardship on the employer's business. See Morrissette-Brown v. Mobile Infirmary Medical Center, 2006 WL 1999133 at 3 (S.D. Ala. 2006). To establish a prima facie case of failure to accommodate an employee's religious beliefs, a plaintiff must show (1) she has a *bona fide* religious belief which conflicted with a requirement of her employment; (2) she informed her employer about the belief and the conflict, and (3) she was discharged, threatened, or subject to discriminatory treatment because of such beliefs. See Beadle v. Hillsborough County Sheriff's Department, 29 F.3d 589, 592, n.5 (11th Cir. 1994). Once a plaintiff has established a prima facie case, the burden shifts to the employer to show it made good faith efforts to accommodate the employee's religious beliefs. See Hellinger v. Eckerd Corp., 67 F.Supp.2d 1359, 1364 (S.D. Fla. 1999). The employer may meet this burden by making a reasonable accommodation or by showing that any accommodation would result in an undue hardship. See id.

It does not appear the parties dispute that Plaintiff has established her prima facie case. What is disputed is whether Defendant took reasonable efforts to accommodate Plaintiff's religious beliefs. Defendant argues that it attempted to accommodate Plaintiff's religious beliefs by informing her that she could use her annual leave for religious holidays instead of LWOP. According to Defendant, permitting Plaintiff to use LWOP instead of annual leave would impact Clark's ability to request additional funded positions for the Pharmacy Service. Plaintiff, however, argues that requiring her to use annual leave for religious holidays was

not a reasonable accommodation of her religious beliefs. Based on facts presently in the record, this is an issue for the jury.

By requiring Plaintiff to use annual leave for religious holidays, Defendant, in essence, offered an accommodation that could be found by the jury to have discriminated against Plaintiff by negatively affecting a benefit of employment enjoyed by other employees who did not share the same religious beliefs as Plaintiff, i.e. vacation time. See Cooper v. Oak Rubber Company, 15 F.3d 1375, 1379 (6th Cir. 1994)(finding that an employer who permits an employee to avoid mandatory Sabbath work only by using accrued vacation did not reasonably accommodate the employee because the employee stood to lose a benefit enjoyed by other employees who did not observe the same Sabbath). At this juncture, Defendant has failed to provide evidence sufficient to support summary judgment, specifically, that permitting Plaintiff to use LWOP would have caused it an undue hardship. While Defendant argues that the use of LWOP instead of annual leave would negatively affect Clark's ability to request additional funded positions for the Pharmacy Service, thereby creating an undue hardship. A jury must weigh this argument against Plaintiff's claim that no such hardship would be created.

Plaintiff has also alleged that she was constructively discharged as a result of the discrimination she faced.[6] In order to establish constructive discharge, Plaintiff must present evidence that her working conditions were "so intolerable that a reasonable person in her

---

[6] This Court has already dismissed Plaintiff's sex discrimination claim. Accordingly, this Court will only address constructive discharge as to her religious discrimination claim.

position would have been compelled to resign." Rutledge v. Sun Trust Bank, 2007 WL 604966 at 6 (M.D. Fla. 2007)(citing Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 n.2 (11th Cir. 1997)). Plaintiff testified that Clark created an environment that was hostile after she requested use of her LWOP to observe her holy days. Specifically, Plaintiff testified that Clark instructed her supervisors to watch her "comings and goings," required Plaintiff to report to the pharmacy administration whenever she left the VA, accused her of abusing her working hours and threatened her professional reputation with other departments in the hospital. According to Plaintiff, she felt the environment at work was hostile and placed her, a working mother, in a position where she had to decide between her career and reputation and taking care of her children. It was under these circumstances that she argues she felt forced to resign. This issue is also one for a jury.

It is therefore ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment or Partial Summary Judgment (Dkt. 19) is **GRANTED IN PART AND DENIED IN PART** as stated herein.

**DONE** and **ORDERED** in Tampa, Florida on April 12, 2007.

_JAMES S. MOODY, JR._
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2006\06-cv-157 Motion for SJ- Religious Discrimination.wpd